UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

ROBERT L. JENKINS, JR.,

          Plaintiff,

    -vs-                12-CV-1029C

CAROLYN W. COLVIN, Acting Commissioner of
Social Security,[1]

          Defendant.

---

  Plaintiff Robert L. Jenkins, Jr., initiated this action pursuant to Section 405(g) of the Social Security Act, 42 U.S.C. § 405(g), to review the final determination of the Commissioner of Social Security (the "Commissioner") denying plaintiff's application for Social Security Disability Insurance benefits ("DIB") or Supplemental Security Income ("SSI"). The plaintiff has filed a motion for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure (Item 7) and the Commissioner has filed a cross motion requesting the same relief (Item 10). For the following reasons, the Commissioner's motion is granted and plaintiff's motion is denied.

## BACKGROUND

  Plaintiff was born on February 23, 1948 (Tr. 115 ).[2] He applied for benefits on January 20, 2009, alleging disability as of January 14, 2009 due to stroke, high blood

---

  [1] Carolyn W. Colvin became the Acting Commissioner of Social Security on February 14, 2013. Pursuant to Fed. R. Civ. P. 25(d), she is substituted for former Commissioner Astrue as defendant in this case and no further action need be taken.  See 42 U.S.C. § 405(g).

  [2] References preceded by "Tr." are to page numbers of the administrative record, filed by defendant as part of the answer to the complaint (Item 6).

pressure, hearing loss, heart disease, high cholesterol, acid reflux, and PTSD (Tr. 151). Plaintiff's application was denied (Tr. 63-70). Plaintiff then requested a hearing, which was held on January 13, 2011 before Administrative Law Judge ("ALJ") Robert T. Harvey (Tr. 31625). Plaintiff testified at the hearing and was represented by counsel.

By decision dated February 10, 2011, the ALJ found that plaintiff was not under a disability within the meaning of the Social Security Act (Tr. 16-23). The ALJ's decision became the Commissioner's final determination when the Appeals Council denied plaintiff's request for review (Tr. 1-5).

Plaintiff then filed this action on October 25, 2012, pursuant to the judicial review provision of 42 U.S.C. § 405(g). On June 11, 2013, the plaintiff filed a motion for judgment on the pleadings on the ground that the ALJ erred in finding that plaintiff could perform his past relevant work as a security guard (*see* Item 7). The Commissioner cross-moved for judgment on the pleadings on the ground that the ALJ's decision was supported by substantial evidence (Item 10). The Commissioner filed a response on August 12, 2013 (Item 15), plaintiff filed a response on August 29, 2013 (Item 16), and the Commissioner filed a reply on September 16, 2013 (Item 18).

## DISCUSSION

**I. Scope of Judicial Review**

The Social Security Act states that upon district court review of the Commissioner's decision, "the findings of the Commissioner . . . as to any fact, if supported by substantial evidence, shall be conclusive . . . ." 42 U.S.C. § 405(g). Substantial evidence is defined

as evidence which "a reasonable mind might accept as adequate to support a conclusion." *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938), *quoted in Richardson v. Perales*, 402 U.S. 389, 401 (1971); *see also Tejada v. Apfel*, 167 F.3d 770, 773-72 (2d Cir. 1999). Under these standards, the scope of judicial review of the Commissioner's decision is limited, and the reviewing court may not try a case *de novo* or substitute its findings for those of the Commissioner. *Richardson*, 402 U.S. at 401. The court's inquiry is "whether the record, read as a whole, yields such evidence as would allow a reasonable mind to accept the conclusions reached" by the Commissioner. *Sample v. Schweiker*, 694 F.2d 639, 642 (9th Cir. 1982), *quoted in Winkelsas v. Apfel*, 2000 WL 575513, at *2 (W.D.N.Y. February 14, 2000).

However, "[b]efore the insulation of the substantial evidence test comes into play, it must first be determined that the facts of a particular case have been evaluated in light of correct legal standards." *Klofta v. Mathews*, 418 F. Supp. 1139, 1141 (E.D. Wis. 1976), *quoted in Gartmann v. Secretary of Health and Human Services*, 633 F. Supp. 671, 680 (E.D.N.Y. 1986). The Commissioner's determination cannot be upheld when it is based on an erroneous view of the law that improperly disregards highly probative evidence. *Tejada*, 167 F.3d at 773.

## II. Standard for Determining Eligibility for Disability Benefits

To be eligible for DIB and/or SSI under the Social Security Act, plaintiff must show that he or she suffers from a medically determinable physical or mental impairment "which can be expected to result in death or which has lasted or can be expected to last for a

continuous period of not less than 12 months . . .," 42 U.S.C. § 423(d)(1)(A), and is "of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy . . . ." 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B). The Regulations set forth a five-step process to be followed when a disability claim comes before an ALJ for evaluation of the claimant's eligibility for benefits. *See* 20 C.F.R. §§ 404.1520, 416.920. First, the ALJ must determine whether the claimant is presently engaged in substantial gainful activity. If the claimant is not, the ALJ must decide if the claimant has a "severe" impairment, which is an impairment or combination of impairments that "significantly limits [the claimant's] physical or mental ability to do basic work activities . . . ." 20 C.F.R. §§ 404.1520(c), 416.920(c). If the claimant's impairment is severe, the ALJ then determines whether it meets or equals the criteria of an impairment found in 20 C.F.R. Pt. 404, Subpart P, App. 1 (the "Listings"). If the impairment meets or equals a listed impairment, the claimant will be found to be disabled. If the claimant does not have a listed impairment, the fourth step requires the ALJ to determine if, notwithstanding the impairment, the claimant is capable of performing his or her past relevant work. Finally, if the claimant is not capable of performing his or her past relevant work, the fifth step requires the ALJ to determine whether the claimant is capable of performing other work which exists in the national economy, considering the claimant's age, education, past work experience, and residual functional capacity. *See Curry v. Apfel*, 209 F.3d 117, 122 (2d Cir. 2000); *Reyes v. Massanari*, 2002 WL 856459, at *3 (S.D.N.Y. April 2, 2002); 20 C.F.R. §§ 404.1520(g), 416.920(g).

The claimant bears the burden of proof with respect to the first four steps of the analysis. If the claimant demonstrates an inability to perform past work, the burden shifts to the Commissioner to show that there exists other work that the claimant can perform. *See Rosa v. Callahan*, 168 F.3d 72, 77 (2d Cir. 1999). The Commissioner ordinarily meets her burden at the fifth step by resorting to the medical vocational guidelines set forth at 20 C.F.R. Pt. 404, Subpart P, App. 2 (the "Grids").[3] However, where the Grids fail to describe the full extent of a claimant's physical limitations, the ALJ must "introduce the testimony of a vocational expert (or other similar evidence) that jobs exist in the economy which claimant can obtain and perform." *Bapp v. Bowen*, 802 F.2d 601, 603 (2d Cir. 1986).

In this case, the ALJ determined that the plaintiff had not engaged in substantial gainful activity since January 14, 2009 (Tr. 18). Upon review of plaintiff's medical records and hearing testimony, the ALJ found plaintiff has severe impairments, including cerebral nonhemorrhagic infarction, headaches, and hypertension, but that these impairments were not of sufficient severity to meet or equal any of the impairments in the Listings (Tr. 18-19). The ALJ also determined that plaintiff's post-traumatic stress disorder is not a severe impairment because plaintiff testified that condition resolved in 2009 (Tr. 18); 20 C.F.R. § 404.1521. The ALJ then determined that plaintiff could perform his past relevant work as a security guard (Tr. 22). Based on these findings, the ALJ determined that plaintiff was not disabled within the meaning of the Social Security Act at any time from January 14, 2009 through the date of the decision. *Id.*

---

[3]The Grids were designed to codify guidelines for considering residual functional capacity in conjunction with age, education and work experience in determining whether the claimant can engage in substantial gainful work existing in the nation economy. *See Rosa*, 168 F.3d at 78; *see also Zorilla v. Chater*, 915 F. Supp. 662, 667 (S.D.N.Y. 1996).

### III. The Medical Record

On January 15, 2009, plaintiff went to the emergency room of Niagara Falls Memorial Medical Center complaining of dizziness, weakness, and numbness and tingling on his left side. He was diagnosed with having had a stroke. He also had uncontrolled hypertension and a history of transient ischemic attack ("TIA") (Tr. 310). Plaintiff was discharged on January 18, 2009 (Tr. 434).

Plaintiff received follow-up care with Dr. Nyathappa Anand, M.D. On January 28, 2009, he complained of continued numbness and weakness in the left hemibody (Tr. 520). On April 22, 2009, plaintiff's strength was 5/5 in all extremities. He was directed to continue taking a daily aspirin and blood pressure medication, take part in physical therapy, and was cleared to return to work on April 27, 2009 (Tr. 519).

On June 11, 2009, plaintiff underwent a consultative psychiatric examination. Thomas Ryan, Ph.D. diagnosed mild post-traumatic stress disorder (Tr. 585). He found that plaintiff could follow and understand simple directions, perform simple tasks, maintain attention and concentration, maintain a regular schedule, make decisions, and relate with others. Dr. Ryan found a moderate limitation in plaintiff's ability to deal with stress. *Id.*

On June 11, 2009, plaintiff underwent a consultative physical examination. Plaintiff complained of left leg weakness and numbness (Tr. 588). Dr. Samuel Balderman, M.D. noted that plaintiff walked with a slight limp favoring the left, used no assistive devices, and needed no help in getting on or off the examining table (Tr. 589). Strength was 5/5 on the right and 4/5 on the left (Tr. 590). Joints were stable and non-tender. *Id.* Dr. Balderman

found a minimal to mild limitation in prolonged walking or climbing due to weakness in the left leg. *Id.*

Plaintiff had a follow-up appointment with Dr. Anand on June 26, 2009. Dr. Anand found that plaintiff was "doing quite well"(Tr. 709). Strength was 6/6 in all four extremities, but there was decreased touch, cold, and pin prick in the left hemibody of about 20 percent. Plaintiff walked with a normal gait. *Id.*

Plaintiff received routine care through the Veterans Administration from November 2009 to May 2011, primarily for treatment of hypertension (Tr. 641-81). A prostate biopsy in August 2010 revealed no evidence of invasive carcinoma (Tr. 703).

## IV.  Hearing Testimony

At the hearing on January 13, 2011, plaintiff testified that as a result of a stroke, he had weakness on his left side, but that his strength was returning (Tr. 37). He has headaches twice per week and promptly treats them with aspirin (Tr. 39). He has experienced burred vision, the last episode occurring about two months prior to the hearing. *Id.* Plaintiff testified that he feels "woozy" on a daily basis (Tr. 41). He experiences numbness and tingling in his left extremities and sometimes has to catch himself from falling (Tr. 42). He has constant pain in his left foot (Tr. 44).

Plaintiff testified that he worked as a security guard in 2005 and 2006 (Tr. 50). He was on his feet most of the day and lifted 20 pounds or less. *Id.* Plaintiff stated that he is unable to stand on his feet and do factory work (Tr. 51). He does household chores such as washing dishes, vacuuming, making beds, laundry, sweeping, and taking out the trash

(Tr. 52). He goes shopping with his wife, goes to church, walks, drives, bathes, and dresses himself (Tr. 53). Plaintiff stated that he can walk approximately 10 to 15 feet before he has a problem, and can only stand for 5 to 10 minutes (Tr. 54). He is unable to bend from the waist, squat, or climb (Tr. 55). He can walk about one-half mile without discomfort (Tr. 58).

## V.  The ALJ's Evaluation of Plaintiff's Residual Functional Capacity

Plaintiff argues that, in evaluating his residual functional capacity ("RFC"), the ALJ erred in finding that plaintiff was able to stand or walk for up to six hours in an eight-hour workday. Residual functional capacity ("RFC") is defined as: "what an individual can still do despite his or her limitations." *Melville v. Apfel*, 198 F.3d 45, 52 (2d Cir. 1999). "Ordinarily, RFC is the individual's maximum remaining ability to do sustained work activities in an ordinary work setting on a regular and continuing basis, and the RFC assessment must include a discussion of the individual's abilities on that basis. A 'regular and continuing basis' means 8 hours a day, for 5 days a week, or an equivalent work schedule." *Id.* Here, the ALJ found that plaintiff was capable of performing his past relevant work as a security guard at a light exertional level and that this RFC was supported by the objective medical evidence, the nature, extent and frequency of treatment, the plaintiff's testimony regarding his activities of daily living, and opinion evidence (Tr. 22).

The ALJ noted that none of plaintiff's treating physicians indicated that plaintiff was unable to perform work activities (Tr. 22). Plaintiff argues that the ALJ was thus under an obligation to develop the record further in this respect, and to elicit an opinion from one of

8

his treating physicians regarding his RFC.  Although the ALJ has an affirmative duty to develop the record, the ALJ is not required to obtain every conceivable piece of information; the Commissioner's conclusion will be sustained if the record contains sufficient evidence to support that conclusion under the applicable standard.  *Rosa v. Callahan*, 168 F.3d at 79 n. 5 ("[W]here there are no obvious gaps in the administrative record, and where the ALJ already possesses a 'complete medical history,' the ALJ is under no obligation to seek additional information in advance of rejecting a benefits claim.") (citations omitted).  Here, the administrative record contains several years of treatment notes and records, reports of plaintiff's treating providers, and assessments by consultative examiners.  The record indicates that plaintiff was recovering from his stroke, that he walked with a normal gait, his strength was 6/6 in all four extremities, and that he experienced a 20 percent decrease in touch, cold, and pin prick in the left hemibody (Tr. 709).  Dr. Anand cleared plaintiff to return to work in April 2009.  *Id.*  The consultative examination by Dr. Balderman in June 2009 showed findings that were largely normal, with no motor or sensory deficits, except for a slight limp (Tr. 589-90).

Additionally, plaintiff argues that the ALJ erred in failing to consider his good work history in evaluating his credibility.  "A claimant with a good work record is entitled to substantial credibility when claiming an inability to work because of a disability."  *Rivera v. Schweiker,* 717 F.2d 719, 725 (2d Cir. 1983).  Work history, however, is "just one of many factors" appropriately considered in assessing credibility.  *Carvey v. Astrue*, 380 F. App'x 50, 53 (2d Cir. 2010); *Schaal v. Apfel*, 134 F.3d 496, 502 (2d Cir. 1998). Notwithstanding plaintiff's alleged good work record, the ALJ discounted his credibility on the severity of his

impairment in reasonable reliance on contrary medical evidence, particularly the absence of any medical evidence of an inability to ambulate. Having reviewed the medical record, the court finds that the objective medical evidence is fully supportive of the ALJ's RFC determination and that the ALJ was under no further obligation to develop the record.

## VI. The ALJ's Determination Regarding Past Relevant Work

Plaintiff further argues that the ALJ erred in his determination that he could resume his past relevant work as a security guard. Specifically, plaintiff contends that the ALJ did not adequately evaluate his ability to resume past relevant work as required by Social Security Ruling 82-62.

Plaintiff has the burden to show that he cannot perform his past relevant work, either as he previously performed it or as it is performed in the national economy. *Jasinski v. Barnhart*, 341 F.3d 182, 285 (2d Cir. 2003) (citing *Jock v. Harris*, 651 F.2d 133, 135 (2d Cir. 1981); SSR 82–62, 1982 WL 31386 (SSA 1982)). In order to determine whether an impairment prevents a claimant from performing his past work, the ALJ is required to review the plaintiff's RFC and the physical and mental demands of the work he has done in the past. 20 C.F.R. §§ 404.1520(e), 516.920(e). Plaintiff testified that he worked as a security guard in 2005 and 2006. He was on his feet most of the day and lifted 20 pounds or less (Tr. 50). The ALJ assessed plaintiff's credibility and found that his admitted daily activities were not consistent with his allegation of disability (Tr. 22). Relying on the opinion of Dr. Balderman, the ALJ found that plaintiff had only a minimal to mild limitation for prolonged walking (Tr. 21). Having reviewed the administrative record, the court finds that

substantial evidence supports the ALJ's determination that plaintiff had the RFC to perform light work, and therefore plaintiff could perform his past relevant work as a security guard.

Plaintiff argues that, at the very least, the ALJ should have consulted a vocational expert for an opinion on the plaintiff's ability to perform his past relevant work.  However, the decision to call a vocational expert to provide testimony or other evidence pertaining to an individual's residual functional capacity for past relevant work is discretionary, not mandatory.  *See Lynch v. Astrue*, 2008 WL 3413899, * 5 (W.D.N.Y. Aug. 8, 2008); 20 C.F.R. § 404.1560(b)(2).  Accordingly, the ALJ's failure to call or consult a vocational expert in this case does not constitute legal error of the type requiring reversal or remand for further proceedings.

## **CONCLUSION**

The Commissioner's determination that plaintiff is not disabled is supported by substantial evidence in the record.  The Commissioner's motion for judgment on the pleadings (Item 10) is granted and the plaintiff's cross motion (Item 7) is denied.  The Clerk of the Court is directed to close the case.

So ordered.

\s\ John T. Curtin
JOHN T. CURTIN
United States District Judge

Dated: March 5, 2014